UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| LESTER KING, # 223983, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13-cv-406 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| RICHARD CZOP, et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff's claims arise out of his confinement at the Ionia Maximum Correctional Facility (ICF) in June and July 2010. He filed his complaint on April 15, 2013. The defendants are ICF Health Services Manager Judy LeBarre,[1] Corizon, Health Inc. (Corizon),[2] and its employee, Richard Czop, M.D. Plaintiff alleges that in mid-2010, he was found guilty of major misconduct for destruction of a CPAP machine.[3] He alleges that requests for a new machine that he made in June and July 2010 were denied. He alleges that on July 5, 2010, Richard Czop, M.D., denied his request for a new

---

[1] Plaintiff's complaint refers to defendant Judy LeBarre as "Jodie LeBarrge." Plaintiff's spelling errors have been ignored. Defendant LeBarre's name is reproduced herein as it appears in her motion for summary judgment and the supporting brief. (docket #s 15, 16).

[2] Plaintiff initially claimed that Correctional Medical Services, Inc. (CMS) was Dr. Czop's employer. Dr. Czop was employed by Corizon and its corporate predecessors. (Czop Aff. ¶ 2, docket # 24-2, ID# 187). All the briefs filed by the parties refer to Corizon as Czop's employer. (docket #s 24, 33, 35). Corizon is the name that will be used throughout this report and recommendation to refer to Dr. Czop's employer.

[3] CPAP is an abbreviation for continuous positive airway pressure. (Czop Aff. ¶ 5, docket # 24-1, ID# 188).

CPAP machine because, in his medical opinion, plaintiff did not need one. Dr. Czop also allegedly stated that his employer no longer honored or treated sleep apnea. Plaintiff alleges that defendants violated his Eighth Amendment rights and seeks damages and injunctive relief.

The matter is before the court on a motion for summary judgment by Dr. Czop and Corizon (docket # 24) and a motion for summary judgment by defendant LeBarre based on the affirmative defense provided by 42 U.S.C. § 1997e(a) (docket # 15). Plaintiff has filed his response.[4] (docket # 33). For the reasons set forth herein, I recommend that defendant LeBarre's motion for summary judgment be granted and that all plaintiff's claims against her be dismissed without prejudice. I recommend that the motion for summary judgment by defendants Corizon and Dr. Czop be granted and that judgment be entered in their favor on all plaintiff's claims.

## Applicable Standards

**A.   Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a

---

[4]Defendant LeBarre's motion for summary judgment has been pending for a year. The motion for summary judgment by Corizon has been pending for more than six months. No party has objected to evidence presented in support or in opposition to the motions. *See* FED. R. CIV. P. 56(c)(2). All such objections are deemed waived. Consideration of the evidence presented by the parties will not result in any "gross miscarriage of justice." *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994); *see also Lauderdale v. Wells Fargo Home Mortg.*, 552 F. App'x 566, 572 (6th Cir. 2014); *Metroka-Cantelli v. Postmaster General*, No. 3:12-cv-242, 2013 WL 5939776, at * 8 (N.D. Ohio Nov. 5, 2013) (collecting cases); *Strickland v. Michigan Secretary of State*, No. 1:10-cv-1119, 2012 WL 851128, at * 3 n.2 (W.D. Mich. Jan. 27, 2012).

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549

(6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Srouder v. Dana Light Axle Mfg., LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- h[er] showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

### B. Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies

Defendant Judy LeBarre has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules

established by state law.  *Jones v. Bock*, 549 U.S. at 218-19.  In *Woodford v. Ngo*, the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion."548 U.S. 81, 93 (2006).  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."  *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).  Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court.  548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a).  The procedural bar does not apply where the State declines to enforce its own procedural rules.  *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[5]  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies.  *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance.  The following is an overview of the grievance process.  Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.  *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted

---

[5]A copy of the policy directive is found in the record.  *See* docket # 16-2, ID#s 81-87.

resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the regional health administrator or the administrator's designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate

and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

**<u>Proposed Findings of Fact</u>**

The following facts are beyond genuine issue. Plaintiff is an inmate held in the custody of the Michigan Department of Corrections (MDOC) on criminal convictions. He is currently an inmate at the Gus Harrison Correctional Facility (ARF). (docket # 33). Corizon is a private company providing medical care to inmates in the MDOC's custody. Dr. Czop is a former Corizon employee who treated plaintiff during his confinement at the Ionia Correctional Facility (ICF). (Czop Aff. ¶¶ 2-5, docket # 24-1, ID#s 187-88).

### I. Medical Care

Plaintiff has been diagnosed with obstructive sleep apnea (OSA). He also has a history of breaking the CPAP machines that the State has provided. In 2009, there was a consensus among medical care providers that plaintiff was breaking his CPAP machines intentionally. The machines were repaired or replaced and given back to plaintiff. (docket # 26-1, ID#s 229-30). On March 12, 2010, plaintiff indicated that the CPAP machine was broken. A nurse ordered a new nasal mask. (*Id.* at ID# 233). On March 17, 2010, plaintiff reported that he was "happy with" his CPAP unit. (*Id.* at ID# 626). Nine days later, he gave the machine back to medical personnel. (*Id.* at ID# 236). Almost immediately, "he requested it back." (*Id.*).

On April 27, 2010, plaintiff received a CPAP mask. He complained that "it was the wrong one, [and] he wanted a strap." Plaintiff was provided with a different strap in accordance with his request. (*Id.* at ID# 237; docket # 33-1 at ID# 367). On May 18, 2010, plaintiff "smashed" his CPAP machine. He was given a CPAP machine two days later. (docket # 26-1 at ID#s 238-39).

Progress notes dated June 7, 2010, indicate that plaintiff "ha[d] broken 3 CPAP machines." (*Id.* at ID# 242). On June 10, 2010, plaintiff reported that he "took a bunch of pills." He was rushed to the hospital for treatment. He survived the overdose. (*Id.* at ID#s 240, 246). Plaintiff was returned to prison. A suicide risk evaluation on June 11, 2010, noted that plaintiff had been warned that if he misused the CPAP machine, "it would be removed and he [would] be placed back in constant observation." (*Id.* at ID# 243). On June 17, 2010, he destroyed another CPAP machine. (*Id.* at ID# 244). On June 22, 2010, an order was placed for a CPAP machine, despite plaintiff "smashing at least 5 machines in the last year." (*Id.* at ID# 247). On June 23, 2010,

plaintiff was transferred to Ionia Correctional Facility (ICF) for out-patient treatment. (*Id.* at ID#s 245, 247).

On August 5, 2010, Dr. Czop conducted an examination to determine whether plaintiff had an ongoing need for the CPAP machine. Dr. Czop was aware that plaintiff had a history of destroying CPAP machines. Dr. Czop's evaluation was limited to the medical necessity of the CPAP machine. Whether or not plaintiff was intentionally breaking his machines did not factor into his evaluation. (docket # 24-1, Czop Aff. ¶ 5, ID# 188). Dr. Czop identified two factors in determining the course of treatment for OSA. First, OSA is treated to reduce daytime somnolence problems secondary to disruption of effective sleep. Second, OSA treatment is necessary to augment existing therapies for poorly controlled co-morbid conditions such as hypertension, diabetes, and chronic obstructive pulmonary disorder. Neither factor indicated therapeutic intervention was necessary in this case. Dr. Czop met with plaintiff on August 5, 2010, and reviewed his medical records. Plaintiff had been without a CPAP machine for two months. His posterior airway showed no narrowing or obstructive lesions. Dr. Czop determined that plaintiff did not have an anatomical predisposition toward OSA. (Czop Aff. ¶¶ 6-8, ID#s 188-89). Czop observed no signs of drowsiness or inattention. He was aware of no evidence that plaintiff's activities of daily living (e.g., missing work or falling asleep at work) were affected by his OSA. Dr. Czop found no observable clinical consequences of OSA. He found that plaintiff's co-morbid conditions were, in fact, well-controlled. Dr. Czop determined that CPAP treatment was not necessary. Dr. Czop's decision not to approve plaintiff's request for a CPAP machine was based on his medical knowledge, training, and experience. (docket # 24-1, Czop Aff. ¶¶ 6-9, ID#s 188-90; docket # 33-1 at ID# 409).

On October 18, 2010, Physician's Assistant Joshua Kocha examined plaintiff. Plaintiff complained of one to two wakings per night. He stated that he had weighed as much as 260 pounds, but by October 2010, his weight was down to 215 pounds. Plaintiff's oxygen levels during a sleep study on October 27, 2010, ranged from a brief low of 79% to a high of 95%. Kocha determined that this represented only an alteration in sleep pattern. Kocha agreed that a CPAP machine was not necessary. (docket # 26, ID#s 250-53).

Plaintiff received treatment for a variety of ailments in 2011. On October 7, 2011, he reported that he was sleeping well. He weighed 200 pounds. (*Id.* at ID#s 258-71).

In early 2012, plaintiff renewed his complaints of sleep apnea. On February 16, 2012, Dr. Czop reviewed plaintiff's medical history and conducted an examination. Dr. Czop again determined that plaintiff's medical condition did not warrant treatment with a CPAP machine. Dr. Czop found that there was no indication that plaintiff's activities of daily living were impacted by his sleep complaints. Dr. Czop noted that plaintiff was negative for fatigue. Dr. Czop instructed plaintiff to follow up with medical personnel in a month. Dr. Czop was not aware of any current or previous Corizon policies or procedures barring medical personnel from treating OSA or from distributing CPAP machines. (*Id.* at ID#s 273-75; docket # 24-1, Czop Aff. ¶¶ 6-8, ID#s 188-90). On March 14, 2012, plaintiff was examined by Michael Kennerly, P.A. Kennerly agreed that a CPAP machine was not needed. (docket # 26-1 at ID#s 276-76).

Plaintiff continues to receive extensive medical care. (*Id.* at ID#s 277-330). In October 11, 2013, he stated that his sleep apnea was getting worse. (*Id.* at ID# 321). Thereafter, physicians determined that renewing CPAP treatment would be appropriate. They ordered a CPAP

machine. On November 26, 2013, plaintiff received the CPAP machine. (*Id.* at ID# 322-25; docket # 33-1 at ID# 399).

### II.  Grievance History

The only grievances that plaintiff filed and pursued through a decision at Step III by the MDOC's Grievance and Appeals Section before filing this lawsuit were Grievance No. ICF-10-07-1742-12z1 (docket # 16-5, ID#s 104-08; docket # 33-1, ID#s 369-70) and Grievance No. ICF-10-07-1814-12d (docket # 16-4, ID#s 97-101).

In Grievance No. ICF-10-07-1742-12z1, plaintiff complained that on July 5, 2012, "Health Service" failed to provide him with a CPAP machine. He demanded that he be provided with a CPAP machine within 48 hours or $500.00 for every day that he went without the machine. The Step I response indicated that plaintiff would not be provided with a CPAP machine because a physician had determined that it was not medically necessary. Plaintiff's Step II and III appeals were denied. In Grievance ICF-10-07-1814-12d, plaintiff complained that on July 14, 2010, Nurse Johnson responded to his kite requesting to a see a doctor by stating that his chart had been reviewed and that he had an upcoming appointment with a doctor. Plaintiff repeated his demand for "$500.00 per day." Plaintiff's grievance was denied at Step I and his appeals to Steps II and III were not successful.

**Discussion**

**I.      Exhaustion**

Defendant LeBarre has raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against her as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. Plaintiff did not properly exhaust any claim against defendant LeBarre before he filed this lawsuit. I find that defendant LeBarre has carried her burden on the affirmative defense and is entitled to dismissal of all of plaintiff's claims.

**II.     Eighth Amendment**

A.      Dr. Czop

Plaintiff alleges that Dr. Czop was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *see also Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.' ") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009)).

Plaintiff has not presented evidence sufficient to support the objective or subjective components of an Eighth Amendment claim for deliberate indifference to serious medical needs. Plaintiff has not shown that his OSA was sufficiently serious during the period at issue to satisfy the objective component of an Eighth Amendment claim. *See e.g.*, *Warman v. Marberry*, No. 05-10138, 2008 WL 2745170, at * 6 (E.D. Mich. July 14, 2008). Further, there is no evidence of any deficiency in his medical care. Plaintiff's disagreement with the treatment provided falls far short of supporting an Eighth Amendment claim. *See e.g., Runkle v. Kemen*, 529 F. App'x 418, 424 (6th Cir. 2013); *Kosloski v. Dunlap*, 347 F. App'x 177, 180 (6th Cir. 2009).

I find that defendant Czop is entitled to judgment in his favor as a matter of law on all plaintiff's claims.

B.  Corizon

Plaintiff seeks to hold Corizon vicariously liable for the acts of its employee. A private corporation cannot be held liable under section 1983 on the basis of *respondeat superior* or vicarious liability. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Rather, the plaintiff must establish a policy or custom that caused the constitutional violation. *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008); *see Lane v. Wexford Health Sources*, 510 F. App'x 385, 387 (6th Cir. 2013). Plaintiff has not presented evidence of a custom or policy sufficient to establish entitlement to relief against the corporate defendant. *See Street*, 102 F.2d at 818; *see also Parsons v. Caruso*, 491 F. App'x 597, 609-10 (6th Cir. 2012).

**Recommended Disposition**

For the foregoing reasons, I recommend that defendant LeBarre's motion for summary judgment (docket # 15) be granted and that all plaintiff's claims against defendant LeBarre be dismissed without prejudice. I recommend that the motion for summary judgment by defendants Corizon and Czop (docket # 24) be granted and that judgment be entered in favor of these defendants on all plaintiff's claims.


Dated:  December 12, 2014        /s/  Phillip J. Green
                                 United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).